BOHLMAN VS. THE GREEN BAY AND LAKE PEPIN RAILWAY COMPANY and others.

RAILROADS — *Taking of private property without compensation — Injunction, when allowed — Construction of statute.*

1. Private property cannot be entered upon and permanently occupied for public use, without the consent, express or implied, of the owner, until its value has been ascertained by some legal and proper proceeding, nor until such value has been paid to him, or an adequate and safe fund provided for his compensation.

2. Where such taking is by a private corporation (as a railroad company), the ascertained compensation must be tendered to the owner, and, in case he declines to receive it, must be deposited with some proper person to be kept for such owner until he shall apply for it.

3. An attempt to enter upon the land in such a case, without the damage for its taking having been duly ascertained and tendered, will ordinarily be restrained by injunction on the application of the party whose rights are threatened.

4. Ch. 175, Laws of 1861 (1 Tay. Sts., 1043–44, §§ 32, 33), declares that " any person owning or interested in any land upon which the track of any railroad shall have been constructed, or which shall have been appropriated by any railroad company without compensation having been made therefor, shall have the right to have commissioners appointed," etc.; and that "no injunction shall be granted by any court to prevent the use or occupancy of such land by any railway company," until the amount of damages to which any owner, etc., is entitled, " shall have first been liquidated or final judgment rendered therefor." *Held,*

(1.) That this statute must be regarded as intended to apply only to cases where land has been actually occupied by the company with its track constructed, or with depots or other structures erected thereon and used by the company, and where this has been done with either the express or implied consent of the owner.

Bohlman vs. The Green Bay and Lake Pepin Railway Co. and others.

(2.) That if applied to a case, like the present, where the company merely entered by force, against the owner's protest, and commenced preparing the land as a road-bed, the act would be invalid.

5. The mere fact that a road has been *surveyed* and *located* over land, without any protest on the part of the owner or any attempt by him to have commissioners appointed to assess his damages, does not give the company any right, under said act, to enter upon and permanently occupy the land.

APPEAL from the Circuit Court for *Outagamie* County.

Action for an injunction to restrain the *Green Bay and Lake Pepin Railway Company* and its agents, from appropriating plaintiff's land in the construction of a railway track, and for damages. The complaint alleged that plaintiff was the owner in fee of the premises, on which were situated a house with two barns and a young orchard; that the railway company had located its route across plaintiff's land, through his orchard and barnyards, and so near his house as to render its removal necessary before trains could run on the road; that the location of the road was made without the consent and against the wishes of the plaintiff, defendant's agents and servants having against the protest of plaintiff entered upon and taken possession of part of their route through his lands, and threatened to take possession of the residue and to evict the plaintiff; that they had already begun to remove the barns and threatened to dig up and destroy a part of the fruit trees, and had begun the construction of the road and threatened its continuance by making ditches across said land; that the land had been taken by the railway company without any compensation made or tendered, and that although the route had been located more than six months, the company had not caused or attempted to cause in any way the value of the land so taken, or the extent of damages to be ascertained, and that no agreement had been made between plaintiff and the defendants in relation thereto. Upon the trial plaintiff was offered as a witness in his own behalf, to which defendants objected on the ground that the complaint did

not state a cause of action, which objection was sustained, the court declaring as its opinion and decision that the complaint did not state a cause of action. Plaintiff then rested and defendants moved a nonsuit, which motion was allowed, and judgment of nonsuit being entered, plaintiff appealed.

*George H. Myers*, for appellant.

*Morris & Chynoweth*, contra.

DIXON, C. J. This case presents no question that has not been already settled by the adjudications of this court. It has been settled as one of the rights of private property secured to the owner by the constitution that it cannot, against his will, be taken from him, or entered upon and permanently occupied for public use, until its value has been ascertained by some legal and proper proceeding, and has been paid to him; or if not paid to, or received by him, until an adequate and safe fund has been provided, from which he may, at some future time, be compensated. And in the case of a private corporation, like a railroad company, it has been held that this principle would require the company to tender in money the ascertained damages or compensation, with expenses, if any, to the owner or persons interested; and if he should refuse to receive it, to deposit it with some proper person, to be kept for the owner until he shall apply for it. It has also been settled that the attempt to enter upon and take permanent possession of land for public use without the assent of the owner, and without the damages having been first so ascertained, and paid or tendered to him, is, or would, if consummated, be in the nature of an irreparable injury for the prevention of which the writ of injunction constitutes the proper remedy and should, unless some peculiar reasons be shown for denying it, be issued when applied for in due form by the party whose constitutional rights are thus unlawfully invaded or threatened to be. These points were settled by the case of *Powers v. Bears*, 12 Wis., 213, and the earlier cases in this court there referred to. With these

questions decided and at rest as to the constitutional right of the owner, whose land it is proposed to take for public use, and as to his remedy for the enforcement of that right, or to prevent any unlawful interference with it, nothing seems to be left for our consideration in this case, but the question whether the act, ch. 175, Laws 1861, (1 Tay. Sts., 1043, 1044 §§ 32, 33), is applicable to it or not, and this question we regard as substantially settled by the decision in *Andrews v. The Farmers' Loan and Trust Co.*, 22 Wis., 288, 295, 296. It is obvious from the most cursory reading of that act that it only applies and was only intended to apply to cases where the railroad company has entered upon and has actually built and put its road in operation over the land by the permission, tacit or express, of the owner. The first section has reference to cases where the title of the company to the land has failed or become invalid by reason of some mortgage, judgment, or other lien affecting the same, and speaks of the land as that "upon which they have constructed their track or tracks." The second section is more extended in its application by providing that "any person owning or interested in any land upon which the track of any railroad shall have been constructed, or which shall have been appropriated by any railroad or railway company without compensation having first been made therefor, shall have the right to have commissioners appointed at the expense of said company," etc. The kind of appropriation here spoken of and intended seems to us too clear to admit of doubt. It is an actual occupation of the land by the company with its track constructed and in use or other equivalent appropriation of it to the purposes of the railroad, as for depots or other buildings or structures erected thereon and used by the company. As to lands which have been so taken and used by the company with the assent, express or implied, of the owner, the second section of the act declares no injunction shall be granted to prevent the use or occupancy of the company, until the amount of damages to which the owner or person interested shall be

entitled shall have first been liquidated, or final judgment rendered therefor.

Such was the view taken by this court of the act in the case last above referred to. We there said that the statute made delay on the part of the owner in asserting his rights or his acquiescence in the use of his property by the company, the ground upon which the injunction should be denied, until he had first caused his damages to be appraised and liquidated, or final judgment to be rendered therefor. It was noticed that this was a good reason for refusing the injunction in equity without the statute, and upon this ground and this alone was the court able to resolve the question of the constitutionality of the act in favor of its validity. Had it been supposed that the statute was applicable to a case like the present, where by the facts alleged in the complaint it appears that the owner has never acquiesced at all in the actual occupation or use of his land by the company, but has *in limine* and at the very first attempt of the company to take actual possession without an appraisement and tender of damages, resisted its so doing and commences this action to stay and prevent such proceedings, it is very clear that this court could not, consistently with its previous decisions and with what it conceives to be the requirement of the constitution where private property is to be taken for public use, have held the act a valid and obligatory exercise of the legislative power. It appears from the complaint that the company here had no possession of the land in controversy at the time this suit was brought, except a forcible one taken without the consent and against the protest of the plaintiff by men and teams entering for the purpose of removing the fences, fruit trees and buildings, and digging up and removing the soil in order to prepare the land as a road-bed for the use of the company. No track was laid or could be until after this work should be done, and the company or its agents and servants were mere tresspassing occupants, having entered wrongfully as above stated. It seems out of place under such circumstances.

to dwell longer upon the case.    The survey and location of the road more than six months before, as shown by the complaint, gave the company no right to enter upon or take actual possession of the land without making compensation to the plaintiff. It was no act which required the plaintiff to do anything, either to procure the appointment of commissioners, if such was his right, and have his damages assessed, or to protest or notify the company that he objected to the location of the road across his premises. *Railroad Co. vs. Eble.*, 4 Chand., 81.    If the company desired to acquire the right of way so as to construct its road over the land, it was its duty to institute proceedings for that purpose and to obtain the right in the manner provided by law before entering upon the land to build its road or to take permanent possession of it. *Railroad Co. vs. Eble, supra.* The complaint beyond all question states a good cause of action and the judgment of the court below, dismissing it and nonsuiting the plaintiff, must be reversed and the cause remanded for further proceedings according to law.

*By the Court*—It is so ordered.