MARSHFIELD LAND & LUMBER COMPANY, Appellant, vs. THE JOHN WEEK LUMBER COMPANY (LIMITED), Respondent.

*November 16 — December 7, 1900.*

*Injunctional order: Vacating: Notice: Suspending business of corporation: Highway by user: Logging roads: Custom: License to use: Malicious revocation.*

1. Under secs. 2781 and 2814, Stats. 1898, the court cannot, except upon notice, vacate an injunctional order granted without notice by a court commissioner upon a complaint stating facts sufficient to give him a colorable right to make the order, even though such facts are not sufficient to warrant the interference of equity in plaintiff's behalf.

2. An order restraining a lumbering corporation, a part of whose business was the handling of logs, from continued trespasses in building roads and hauling logs over lands owned by plaintiff, is not within the meaning of sec. 2780, Stats. 1898, which prohibits a court commissioner from granting an injunction "to suspend the general and ordinary business of a corporation."

3. More than twenty years before the commencement of an action to restrain trespasses a logging road had been made at the place in question, which had been used at times in later years by persons logging in that neighborhood, and at times some settlers had hauled a few loads of hay over it. After nonuse for a number of years it had grown up to brush and was incumbered by windfalls. The town had never adopted it as a highway or done any work on it. *Held,* that the road had not become a highway by prescriptive use.

4. A custom in logging sections for loggers to use old roads over private lands, and to make repairs necessary to such use, does not give the right to use such a road against the consent of the owner. Any implied license of use would be revocable at any time, even if the revocation were prompted by malice or ill will.

APPEAL from orders of the circuit court for Taylor county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action was commenced February 21, 1900, to restrain the defendant from entering upon, cutting timber from, crossing over, hauling or banking logs on, or using or injuring, certain premises of the plaintiff. The complaint sets out that the defendant, without its consent, had theretofore entered upon certain premises of the plaintiff with a large number of men and teams, and had proceeded to remove and destroy timber, built logging roads, and had hauled over and banked thereon large quantities of saw-logs, and was continuing such trespasses, and causing irreparable injury thereto, for which plaintiff had no adequate remedy at law, and which it feared might ripen into an easement. Upon the complaint, duly verified, a court commissioner of Taylor county issued an order restraining the defendant, its officers, agents, and employees, from entering upon said premises, from hauling logs over the lands, from cutting any trees thereon, and from building or using any roads thereon, until the further order of the court.

Marshfield Land & Lumber Co. vs. The John Week Lumber Co.

The complaint and order were duly served. On February 23d, the defendant prepared an answer in which it is alleged that defendant's business was logging and lumbering; that it owned certain lands in the neighborhood of plaintiff's lands; that at the time it purchased said lands there was a public road or highway extending from Rib river across plaintiff's lands to a point on defendant's property, and thence to a public highway. Upon information and belief it is alleged that said road had first been used for travel more than twenty years ago, and had been used in hauling logs, hay, and supplies from the river by lumbermen and by the public generally; that commencing on December 1, 1899, the defendant had used said road in traveling back and forth from the river to its said lands, and had made some improvements thereon, blasting stumps and leveling knolls, and denied that it had cut any trees; that said road had been used and improved by those desiring to use it with consent of the owners for more than twenty years, and a prescriptive right to its use was claimed. It was also alleged that the acts complained of were a benefit to the property, and not an injury, and that plaintiff had an adequate remedy at law. The defendant set up the same facts as a counterclaim, with the further allegations that defendant had about 200,000 feet of logs yet to be hauled, and that there was no other way to get them out except over this road, and, if it was prevented from getting them out, they would be a complete loss; that defendant had thirty men and twelve teams doing nothing, and would be obliged to take them out of the woods unless they could put in said logs. There were also allegations that plaintiff was not acting in good faith, but was attempting to extort from defendant a large sum of money for the use of said road; that defendant had offered to give a bond to pay all damages, and was willing to pay for all injuries to said property.

Upon this answer, accompanied with several affidavits

setting out other facts not material to this litigation, the defendant, on February 23, 1900, obtained from the court an order to show cause, returnable at Ashland on March 2d, why an injunctional order should not be made, restraining the plaintiff from molesting the defendant or its employees in hauling logs over this road. The order also provided that in the meantime the plaintiff should be so restrained, and said order made by the court commissioner on February 21, 1900, at the request of plaintiff, was vacated and set aside. On March 6th the court made an order, based upon the answer, the affidavits used on the hearing, and upon the record, restraining the plaintiff, until the further order of the court, from obstructing said road or in any manner interfering with or molesting the defendant or its employees in the use thereof.

Upon this hearing a large number of affidavits were used, on the one side tending to show that the road in question was a mere private logging road, so overgrown with underbrush as to have been impassable by teams when the defendant entered upon the land; that it had only been used casually by an occasional logger for some little time after it had been first cut out, and not at all during later years; that the road had never been laid out or adopted in any way by the town authorities; that the defendant had made application to the town authorities to lay out a temporary logging road over the same route; and in the application therefor, duly verified, it was alleged that said road did not run along or near any highway. The affidavits in support of the application showed that the road had been used at different times by loggers in that neighborhood, and that occasionally a settler had hauled hay over it.

It further appears that pending the proceedings plaintiff obstructed the road by felling trees across it and by blowing holes in it with dynamite. Proceedings to punish for contempt were instituted, and a large number of affidavits used

on said hearing are contained in the record, and it is said were considered by the court in this matter. The most that can be said of them is that they show that there was a determined effort on the one side to prevent the use of the road by injuring and destroying portions of it, and on the other to repair and use it until the logs remaining in the woods had been hauled.

The plaintiff has appealed from the order of March 6, and from so much of the order of February 23, 1900, as vacated the order of the court commissioner first above mentioned.

For the appellant there was a brief by *Schweppe & Urquhart*, attorneys, and *Thompson, Harshaw & Thompson*, of counsel, and oral argument by *A. E. Thompson*.

For the respondent the cause was submitted on the brief of *Cate, Lamoreux & Park*.

BARDEEN, J. We will first consider the appeal from that portion of the order of February 23, 1900, which dissolved the injunction granted in plaintiff's favor by the court commissioner. This order was made by the court upon application of the defendant, and without notice to plaintiff. Sec. 2781, Stats. 1898, says: "If the injunction be granted by a judge without notice the other party, at any time before trial, may apply, *upon notice*, to the court, or to the presiding judge thereof, in which the action is brought to vacate or modify the same." Another section provides that, "An order made out of court, without notice, may be vacated or modified without notice by the judge who made it; or upon motion, after notice, by such judge or by the court, but not otherwise." Sec. 2814. In view of these plain statutory provisions, it is impossible to justify the action of the court above referred to. Sufficient facts were stated in the complaint to give the court commissioner at least a colorable right to make the order restraining the defendant from committing the repeated trespasses upon the plaintiff's land, as alleged. No matter

what the exigencies were, the court ought not to have vacated such order except upon notice. The suggestion by defendant's counsel that the order suspended "the general and ordinary business of a corporation" hardly merits sober consideration. The acts complained of were continued trespasses upon lands owned by plaintiff. It can hardly be said that such is "the general and ordinary business" of the defendant, although there are loggers in northern Wisconsin whose acts would seem to give some color to this assumption. The fact that the defendant was a lumbering corporation, and that a part of its business was the handling of logs, is not sufficient to bring the situation either within the letter or the spirit of sec. 2780, which prevents a court commissioner from issuing an injunction to suspend the general and ordinary business of a corporation. The other objections urged against the order are not deemed of sufficient importance to require notice.

The order of March 6th was based upon the counterclaim in defendant's answer and certain affidavits referred to in the statement. The remaining question is whether there was a sufficient showing made to authorize the court in restraining the plaintiff from obstructing the road or molesting the defendant in its use. When we come to consider all the facts that were before the court, the conclusion is certain that plaintiff was the owner of the premises in question; and, while there is an attempt in the answer to put that fact in issue, the subsequent allegations and the proof produced on the hearing are sufficient to set that matter at rest as stated. The only ground upon which the defendant sought to justify its use of the road was that it had become a highway by prescriptive use. An attempt to set out such use was made in the answer, but the affidavits used on the hearing overwhelmingly show that this contention was unfounded. The most that appears is that a logging road had been made there in the early 70's, which had been used at

Marshfield Land & Lumber Co. vs. The John Week Lumber Co.

different times in later years by persons logging in that neighborhood. At times some settlers had hauled a few loads of hay over it. After nonuse for a number of years it grew up to brush and was incumbered by windfalls. No pretense or claim was made that the town had ever adopted it as a highway or had ever done any work or expended any money upon it. Counsel for the defendant virtually admitted that their claim in this regard was without foundation. They then seek to justify the order of the court on the ground that it was customary in logging sections for loggers to use old roads, and to make such repairs as were necessary to that use. Undoubtedly that is the custom, and very few owners of land object to such use. But such custom does not justify such use when the owner of the property objects. The circumstances might be such that an implied license of use, good until revoked, might be inferred. Such license would be revocable at any time. In this case, if it ever existed, it had been revoked, and its revocation had been emphasized by the strong arm of the law. It can make no difference to defendant's right to an injunction that such revocation caused some hardship to it, or was prompted by some unneighborly feeling towards it. The owner was entitled to the free and exclusive use of its property and without restraint. Any infringement of this right by the court was unlawful, unless based upon some paramount right possessed by defendant or shared by it in common with the public. No such right or privilege was shown, and the order of the court was an unjustifiable invasion of the property interests of the plaintiff. As before suggested, it is no justification to say that it prevented an apparent injustice, or that the acts of plaintiff were indefensible from an ethical point of view. An injustice may often result from the enforcement of strict legal rights, or from acts committed with a malicious motive on one's own premises, or with regard to one's own property. Quite a notable instance may be found

in the recent case of *Metzger v. Hochrein*, 107 Wis. 267. The plaintiff had a clear legal right to the enjoyment of its property free from any interference by defendant, and the right to prevent such interference by an appeal to equity where the injury was irreparable.

An attack is made upon the complaint as not stating facts sufficient to warrant the interference of equity in plaintiff's behalf. On this question we express no opinion. If it be admitted that it is infirm in this regard, it adds nothing to the defendant's counterclaim, neither does it justify the court in an arbitrary dissolution of the injunction based upon it. The statute referred to provided a reasonable rule of practice which should have been followed.

Our conclusion is that that portion of the order of February 23, 1900, appealed from, should be reversed, and the order of March 6, 1900, should also be reversed.

*By the Court.*— The orders are reversed as stated in the opinion, and the cause is remanded for further proceedings according to law.